IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THORNTON CARROLL, | : |
|     Plaintiff, | : |
| v. | :   Civ. No. 11-1041-LPS |
| ABM JANITORIAL SERVICES-MID ATLANTIC, INC., | : |
|     Defendant. | : |

Thornton Carroll, Wilmington, Delaware, Pro Se Plaintiff.

Richard R. Wier and Shannon Larner Brainard, Esquires, Marshall, Dennehey, Warner, Coleman & Goggin, Wilmington, Delaware. Counsel for Defendant.

**<u>MEMORANDUM OPINION</u>**

September 17, 2013
Wilmington, Delaware

*[signature]*

**STARK, U.S. District Judge:**

## I. INTRODUCTION

Plaintiff Thornton Carroll ("Plaintiff") filed this action on October 28, 2011, alleging employment discrimination, violations of his civil rights, and defamation. (D.I. 2) The Court has jurisdiction pursuant to 28 U.S.C. § 1331. In addition, Plaintiff asserts jurisdiction by reason of diversity of the parties. Presently before the Court are the parties' cross-motions for summary judgment. (D.I. 38, 39) For the reasons that follow, the Court will deny Plaintiff's motion and will grant Defendant's motion.

## II. PROCEDURAL AND FACTUAL BACKGROUND

The complaint alleges defamation, civil rights, race discrimination, wrongful termination, and retaliation. (D.I. 2) In his opposition to Defendant's motion for summary judgment (D.I. 44), Plaintiff invokes 42 U.S.C. § 1983.

Plaintiff was hired as a cleaner for Brandywine Building Services, Inc. ("BBS"). (D.I. 2; D.I. 40 Ex. A at 3) Plaintiff remained employed after BBS was acquired by Defendant ABM Janitorial Services-Mid Atlantic, Inc. ("Defendant") on January 1, 2006. (D.I. 2; D.I. 40 Ex. A at 3-5) After Plaintiff became an employee of ABM, he was transferred to the Bank of America ("BOA") worksite in Wilmington, Delaware as a supervisor. (D.I. 40 Ex. A at 5) Plaintiff acknowledged during his deposition that he was an at-will employee. (D.I. 47 Ex. AA at 3) Defendant terminated Plaintiff's employment on August 10, 2009.

On January 1, 2006, Plaintiff received the ABM "Information for Employees" and signed a Statement of Acknowledgment. (D.I. 40 Ex. C at 9) The document provides in part that no employees are permitted to punch another employee's time card and that punching another

1

employee's time card will result in immediate termination with cause. (*Id.* at Ex. C at 3-8) On the same date, Plaintiff received and signed for a copy of the "Employee Instructions Information and Work Rules" ("Work Rules"). (*Id.* at Ex. D at 2) The Work Rules warn that "[u]nder certain circumstances, an action may be serious enough to constitute misconduct, resulting in immediate termination." (*Id.*) In addition, the Work Rules state that "[a]ny tampering with your own or another's attendance record is cause for termination." (*Id.* at ¶ 3(b)) On February 2, 2006, Plaintiff signed an acknowledgment of receipt of the ABM Employee Handbook ("Handbook"). (*Id.* at Ex. B at 6) The Handbook sets forth performance expectations and standards of conduct for ABM employees, and identifies a number of violations which could lead to disciplinary action including termination. (*Id.* at Ex. B at 3-5)

Plaintiff worked the evening shift, Monday through Friday, from 5:00 p.m. to 1:00 a.m. (D.I. 40 Ex. A at 6) Gary Cooper ("Cooper") also worked the evening shift as a shift manager at the BOA site. (*Id.* at 12) Plaintiff and Cooper were lateral supervisors, and Plaintiff did not answer to Cooper, although Cooper was senior, having been at the facility for ten years. (*Id.*) Plaintiff's direct supervisors at the BOA site were project managers Ardrell Weaver ("Weaver") and Rob Bell ("Bell"). (*Id.* at 9) Weaver and Bell reported to ABM District Manager Richard Strazzella ("Strazzella"). (*Id.*)

Plaintiff's job duties included supervising a staff of cleaners who cleaned several buildings at the BOA site. (D.I. 40 Ex. A at 7) His presence was required when the workers were there. (*Id.*) Plaintiff was responsible for overseeing performance, attendance and punctuality of staff, and "for hiring and firing employees," subject to approval from one of the

project managers. (*Id.* at 7-10) Plaintiff could call a project manager if a problem arose at night. (*Id.* at 11-12)

On the evening of July 3, 2009, Plaintiff and Cooper were on duty. Plaintiff was supervising approximately ten employees that evening. (D.I. 40 Ex. A at 15-16) Around 9:30 p.m., Plaintiff saw employees under his supervision leaving early. (*Id.* at 17-19) Plaintiff did not see the employees clock out or question why they did not clock out. (*Id.* at 17, 20, 21) Nor did Plaintiff attempt to stop the employees or question their early departure but, instead, he went to other buildings under his supervision to determine why the employees were leaving early. (*Id.* at 17-18)

Cooper indicates that on the evening in question, he had called Strazzella and told him the work was completed. (D.I. 38 Ex. J at 4) Strazzella's response was, "OK Gary do what you need to do." (*Id.*) Cooper states that he did not inform Plaintiff of his conversation with Strazzella or his decision to allow the staff to leave. (D.I. 38 Ex. K at 2) At some point, Plaintiff called Cooper, who told him that he had allowed the employees to leave early. (D.I. 40, Ex. A at 19) According to Cooper, it was common practice to allow employees to leave early on the evening before a holiday and to clock out the entire staff at the shift end. (*Id.*)

Although Plaintiff saw that employees were leaving early, he did not notify the project managers or district manager prior to the end of the shift. (D.I. 40, Ex. A at 25) In the past, Plaintiff had seen Bell and Weaver, "the people in authority," allow employees to leave early. (*Id.* at 12-15) Plaintiff left about an hour after the employees. (*Id.* at 11) Plaintiff did not check the employees' timecards to make sure they clocked out at the appropriate time. (*Id.* at 23) Plaintiff testified that Cooper signed off on the time sheets to verify their accuracy. (*Id.* at 24)

3

Defendant became aware of the July 3, 2009 early departures in early August, after an employee complained about her pay. (D.I. 40 Ex. A at 29) On August 4, 2009, Plaintiff and Cooper were called into a meeting with Weaver and Strazzella. (D.I. 38 Ex. C) They were each offered the opportunity of a separate interview, but declined. (*Id.*) A report of the investigation states that, because it was the day before a holiday, the complex was "pretty empty all day" and "the night's work had been thoroughly completed." (*Id.*) The report goes on to state that Cooper and Plaintiff made the decision to dismiss the remaining full-time staff at 10:30 p.m. instead of midnight, the normal shift end time. (*Id.*) Plaintiff testified that he admitted knowing the employees were leaving but that he did not know about it prior to their early departure. (*Id.* at D.I. 40, Ex. A at 30) The report states that Cooper and Plaintiff admitted their responsibility for the decision to allow the early shift end. (D.I. 38 Ex. B) Cooper admitted to "punching out employees' timecards." (*Id.*) According to Plaintiff, there was no mention of policy violations during the meeting. (D.I. 38 Ex. P) The report, authored by Strazzella, recommended suspensions for both Cooper and Plaintiff with a warning that future violations would result in immediate termination. (D.I. 38 Ex. C)

On August 5, 2009, Plaintiff requested a second, and private, meeting with Strazzella. (D.I. 40 Ex. A at 31, Ex. F) During the meeting, Plaintiff was offered the opportunity to provide a written statement regarding the events of July 3, 2009, but he declined. (D.I. 40 Ex. A at 32, Ex. F) He did, however, indicate that the employees had actually left at 9:30 p.m. on the night of July 3rd, rather than 10:30 p.m., as had previously been indicated. (*Id.*) Plaintiff told Strazzella that he did not report the early departures because he wanted to maintain a harmonious working relationship with Cooper. (D.I. 40 Ex. A at 31) Plaintiff "didn't want to get in a whole bunch of

conflict and stuff because I had to work with Gary and you all did things the way you wanted to." (*Id.* at 32) Plaintiff did not see the early departure as anything to report. (*Id.*)

An internal ABM email dated August 6, 2009 states, "OK to term Cooper and Carroll. Call me to discuss EOM." (D.I. 38 Ex. D) After Defendant completed its investigation, Strazzella and Senior District Manager Mark DeLucia (" DeLucia") met with Plaintiff on August 10, 2009. (D.I. 38 Ex. O; D.I. 40 Ex. G) During the meeting, Plaintiff was advised that his employment with Defendant was being terminated effective August 10, 2009 for violation of company policies and procedures, as the result of his actions on July 3, 2009. (*Id.*) Strazzella told Plaintiff he was "being terminated because on Friday, July 03, 2009 employees were allowed to leave two [sic] hours early with pay." (D.I. 40 Ex. H) Plaintiff requested a termination letter with the specific company policies that he violated. (D.I. 38 Ex. O)

Cooper's employment was also terminated on August 10, 2009. Cooper told Strazzella and DeLucia that Plaintiff had nothing to do with the employees leaving early and that he had allowed to the employees to leave early after he consulted with Strazzella. (D.I. 38 Ex. J at 3-4) According to Cooper, Strazzella was pressured by DeLucia to terminate him. (*Id.* at 4)

On August 11, 2009, Jeanette Zimmer ("Zimmer"), ABM Mid-Atlantic Regional Human Resources Director, forwarded the August 6, 2009 email to William George ("George"). (D.I. 38 Ex. D) On August 13, 2009, Zimmer authored an email to George that referenced time records policy, standard of conduct policy, and code of conduct and ethics. (D.I. 38 Ex. E) Under a subheading of "reporting illegal or unethical behavior" Zimmer stated, "if either say that the other violated policy. Remember that employee was complacent and could have reported it to the hotline anonymously. (*Id.*) A few hours later, Strazzella authored an email to George that

5

stated, "Hey, when you have a firmer handle on all the documentation/situation, Mr. Carroll requested a termination letter. Jeanette had said that we need not supply him with one at the time of termination." (D.I. 38 Ex. F) On August 14, 2009, Clay Adams ("Adams"), PHR Manager of Employee Relations, authored an email to George that stated, "if you and Jeanette feel that it was a solid investigation and all the facts are straight, there shouldn't be a problem defending the termination decision . . . . . I also, don't know what he is saying about his and Cooper's working relationship. It's one thing if they are peers, but if Carroll looks at Cooper as being 'senior' and a person of authority, you will want to look at it, even if they have the same job title." (D.I. 38 Ex. G)

Plaintiff filed a claim for unemployment benefits with the Delaware Department of Labor ("DDOL"), Division of Unemployment Insurance. (D.I. 38 Ex. H) Defendant opposed the claim and it was initially denied, but the decision was reversed by the Appeals Referee. (*Id.*) On June 2, 2010, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging Defendant discriminated against him by reason of race pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. The EEOC issued a right to sue notice on August 2, 2011. (D.I. 2 Ex. M) Plaintiff testified during his deposition that he is not claiming race discrimination. (D.I. 40 Ex. A51-52)

When asked about the claims raised in the Complaint, Plaintiff testified that he was wrongfully terminated when he was accused of something he did not do. (D.I. 40 Ex. at 39) He testified that Defendant made false allegations and he was not given a fair opportunity to defend himself against the allegations. (*Id.* at 47) He acknowledged that in Delaware an employee can be fired for whatever reason the employer chooses. (*Id.* at 40) He further testified that he was

6

defamed when Defendant sent a letter to the DDOL and the EEOC that Plaintiff had overstepped his authority. (*Id.* at 41-42) In addition, the letter was "published internally." (*Id.* at 43) Plaintiff testified that he has shared the DDOL determination with prospective employers. (*Id.* at 45-46) Finally, Plaintiff testified that retaliation occurred because he was not notified of his rights under ERISA and "things" he was entitled to upon his termination, and he was not allowed to return to his office to retrieve his personal belongings. (*Id.* at 50) Plaintiff testified that Defendant was "getting back at [him]" and that Defendant "just wanted to cause [him] additional harm." (*Id.* at 50-51)

## III. LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all

reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podohnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the non-moving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

Plaintiff moves for summary judgment on the grounds that there is no genuine issue of material fact and he is entitled to summary judgment as a matter of law. Defendant moves for summary judgment on the grounds that: (1) Plaintiff's defamation, civil rights, due process, and retaliation claims fail as a matter of law; and (2) Plaintiff was an at-will employee and cannot maintain a claim for wrongful termination.

### A. Defamation

The Complaint alleges that Defendant made slanderous, libelous, and derogatory false statements to the EEOC and the DDOL. In his motion for summary judgment, Plaintiff adds that internal communications were defamatory. Plaintiff moves for summary judgment on the grounds that, as a result of his termination, his character has been defamed by Defendant's false accusations of fraud, theft, and dishonesty. Defendant moves for summary judgment on the grounds that the communications with the EEOC and the DDOL are protected by qualified privilege, the communications were not defamatory, the statements made were truthful, and it was Plaintiff who disseminated information to potential employers.

Defamation is defined as "that which tends to injure 'reputation' in the popular sense; to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held." *Spence v. Funk*, 396 A.2d 967, 969 (Del. 1978). To establish a claim for defamation, Plaintiff must establish: (1) the defamatory character of the communication; (2) publication; (3) that the communication refers to Plaintiff; (4) the third party's understanding of the communication's defamatory character; and (5) injury. *See Read v. Carpenter*, 1995 WL 945544, at *2 (Del. Super. Ct. June 8, 1995).

In Delaware, an absolute privilege attaches to all statements made in the course of judicial proceedings. *See Short v. News-Journal*, 212 A.2d 718 (Del. 1965). The absolute privilege protects attorneys and participants in litigation from actions for defamation. *See id.* at 410. The privilege affords absolute protection upon a showing that the statements were issued as part of a judicial proceeding and the alleged defamation is relevant to a matter at issue in the case. *See id.* The privilege is not confined to events inside a courtroom, but extends to all communications relating to the litigation, including communications with witnesses and the drafting and filing of pleadings. *See Nix v. Sawyer*, 466 A.2d 407, 410-11 (Del. Super. Ct. 1983).

The absolute privilege bars Plaintiff's defamation claims based upon communications made by Defendant, its attorneys, and employees during the course of the DDOL and EEOC litigation. In addition, Plaintiff has no defamation claim for the self-publication of the alleged defamatory information to potential employers and others. "Self-publication occurs when a plaintiff publishes an allegedly defamatory communication to a third party instead of the defendant publishing it to a third-party." *Gilliland v. St. Joseph's at Providence Creek*, 2006 WL 258259, at *8 (Del. Super. Ct. Jan. 27, 2006). In Delaware, self-publication does not satisfy the publication requirement for a defamation action. *See id.* Without publication, Plaintiff does not have a claim for defamation.

No reasonable jury could find for Plaintiff on the defamation issue. In addition, the claim fails as a matter of law. Therefore, the Court will deny Plaintiff's motion for summary judgment and will grant Defendant's motion for summary judgment on defamation.

**B.     Civil Rights/42 U.S.C. § 1983**

Plaintiff moves for summary judgment on the grounds that he was denied due process of law under the Fourteenth Amendment and he was not afforded an opportunity to be heard. Defendant moves for summary judgment on the grounds that, as an at-will employee of a private employer, Plaintiff had no legal entitlement to "due process" or an "opportunity to be heard."

To the extent that Plaintiff raises a claim pursuant to 42 U.S.C. § 1983, the claim fails as a matter of law. When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). To act under "color of state law," a defendant must be "clothed with the authority of state law." *Id.* at 49.

Defendant is not a state actor and is not "clothed with the authority of state law." *Reichley v. Pennsylvania Dep't of Agric.*, 427 F.3d 236, 244-45 (3d Cir. 2005); *Biener v. Calio*, 361 F.3d 206, 216-17 (3d Cir. 2004). Defendant is corporation that employed Plaintiff. Therefore, the Court will deny Plaintiff's motion for summary judgment and will grant Defendant's motion for summary judgment on the § 1983 claim.

**C.     Title VII - Race Discrimination**

Defendant moves for summary judgment on the race discrimination claim on the grounds that Plaintiff has abandoned the claim. While Plaintiff filed a charge with the EEOC alleging employment discrimination by reason of race discrimination, during his deposition he testified that he was not pursuing the race discrimination claim. Accordingly, the Court will grant Defendant's motion for summary judgment on the Title VII race discrimination claim.

### D. <u>**Wrongful Termination**</u>

Plaintiff moves for summary judgment on the ground that he was not terminated for just cause. Defendant moves for summary judgment on the grounds that Plaintiff concedes that he was an at-will employee and there are no exceptions to the at-will doctrine that provide a basis for any wrongful termination claim.

Plaintiff argues that was not terminated for just cause given that he is "innocent of the charges represented." (D.I. 38 at 7) Defendant argues that Delaware is an at-will employment state and that it retained the right to terminate Plaintiff's employment, with or without cause and with or without notice.

Ordinarily, employment in Delaware is considered employment at-will, terminable at the will of either party with or without cause. *See Haney v. Laub*, 312 A.2d 330, 332 (Del. Super. Ct. 1973); *Avallone v. Wilmington Med. Ctr.*, 553 F. Supp. 931, 936 (D. Del. 1982). The existence of an employee handbook that is a unilateral statement of company policies and that does not set out a definite term of employment does not alter a plaintiff's at-will employment status. *See e.g., Gibbs v. Allen's Family Foods*, 2012 WL 5830697 (Del. Super. Ct. Apr. 25, 2012).

Although Delaware is an at-will employment state, an employer has an implied covenant of good faith and fair dealing with every employee, and a claim can be brought for a breach of this covenant. *See E.I. DuPont Nemours v. Pressman*, 679 A.2d 436 (Del. 1996). The Delaware Supreme Court has explained the difference between the doctrine of employment at-will and the covenant of good faith and fair dealing as follows: "The [employment at-will] doctrine generally permits the dismissal of employees without cause and regardless of motive. Nevertheless, we

hold that the covenant [of good faith and fair dealing] permits a cause of action against an employer for the deceitful acts of its agent in manufacturing materially false grounds to cause an employee's dismissal." *Id.* at 437. In this context, a breach of the covenant of good faith and fair dealing occurs in four limited circumstances: (1) termination of employment when the termination violates public policy; (2) where the employer misrepresents important facts, inducing an employee either to stay or accept a new position; (3) when an employer uses its superior bargaining power to deprive the employee of clearly identifiable compensation related to the employee's past services; or (4) the employer falsifies or manipulates employment records to create fictitious grounds for termination. *See Lord v. Souter*, 748 A.2d 393, 400 (Del. 2000).

The record reflects that Plaintiff was discharged by Defendant for violation of timekeeping procedures. Plaintiff admitted he saw employees under his supervision leave the premises early and he did not see them punch their timecards when they left. Yet, he did not report the early departure to his superiors but, instead, spoke to the Cooper, the other supervisor on duty that evening. In failing to notify his superiors, and in also leaving the premises early, Plaintiff appears to have condoned the early departure, all of which was in derogation of Defendant's timekeeping policies. The record does not reflect that any employee manufactured false allegations, and the other exceptions to the at-will employment doctrine are inapplicable. Accordingly, Plaintiff's wrongful discharge claim falls outside the limited exception to the doctrine of at-will employment.

Finally, having carefully reviewed the record, the Court finds that Plaintiff was an at-will employee at the time of his discharge from ABM's employment. The portions of the employee handbook submitted in support of the motions for summary judgment did not alter Plaintiff's

at-will employment status. *See Heideck v. Kent Gen. Hosp., Inc.*, 446 A.2d 1095, 1096 (Del. 1982).

Plaintiff's wrongful discharge claim fails to state a cause of action for which a remedy is available under Delaware law. Therefore, the Court will deny Plaintiff's motion for summary judgment and will grant Defendant's motion for summary judgment and on the wrongful discharge claim.

### E. Retaliation

Plaintiff alleges retaliation occurred because he was unable to return to his office to retrieve personal belongings which were never returned to him, and he was not notified of the "things" (i.e., benefits) to which he was entitled upon his termination. Defendant moves for summary judgment on the grounds that Plaintiff did not engage in protected activity prior to his termination.

Plaintiff does not indicate under what law his retaliation claim proceeds. To the extent that Plaintiff alleges a common law retaliation claim or a Title VII retaliation claim, the claims fail. In both instances, Plaintiff must demonstrate that the discharge occurred in retaliation for protected activities. *See Griesbaum v. Aventis Pharm.*, 259 F. App'x 459, 465 (3d Cir. Dec. 24, 2007) (applying Title VII retaliation law when analyzing common law retaliation claim). To establish a prima facie case of retaliation, a plaintiff must show that: (1) he engaged in a protected employee activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action. *See, e.g., Fasold v. Justice*, 409 F.3d 178, 188 (3d Cir. 2005). Here, the alleged retaliatory acts occurred prior to the time Plaintiff engaged in the protected activity, i.e., the filing

of a charge of discrimination and a claim for unemployment insurance benefits.[1]

Plaintiff has failed to establish retaliation by Defendant. Therefore, the Court will deny Plaintiff's motion for summary judgment and will grant Defendant's motion for summary judgment on the issue.

## VI. CONCLUSION

For the above reasons, the Court will deny Plaintiff's Motion for Summary Judgment (D.I. 38) and will grant Defendant's Motion for Summary Judgment (D.I. 39).

An appropriate Order will be entered.

---

[1] To the extent Plaintiff alleges retaliation by reason of Defendant's failure to notify him of benefits available upon his termination, the record reflects that Plaintiff's COBRA benefit notification claims were fully settled on May 11, 2010. *See Carroll v. Strazzella*, Civ. No. 10-182-JJF-MPT (D. Del.). (*See* D.I. 2 Ex. L)

15